# STEPHEN DONALD NYE *v.* STATE OF MARYLAND

[No. 1290, September Term, 1980.]

*Decided June 5, 1981.*

112

The cause was argued before MOORE, LISS and MACDANIEL, JJ.

*John H. McDowell,* with whom was *Paul Ottinger* on the brief, for appellant.

*Thomas P. Barbera, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General of Maryland,* and *John R. Salvatore, State's Attorney for Washington County,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Appellant, Stephen Donald Nye, was indicted on November 27, 1979 for possession with intent to distribute controlled dangerous substances (count 1); possession of controlled dangerous substances (count 2); and possession of controlled dangerous paraphernalia (count 3). On December 14, 1979, appellant's counsel entered his appearance and immediately moved to suppress all evidence derived from intercepted telephonic communications. A hearing on the motion to suppress was held on March 16, 1980, and the motion was subsequently denied. A renewed motion to suppress was then filed on May 13, 1980, based upon the newly decided case of *Baldwin v. State,* 45 Md. App. 328, 413 A.2d 246 (1980),[1] which was again denied. Appellant was tried before a jury on May 16, 1980, and convicted of counts one and three. Sentence was imposed on each count and defendant appeals. He raises the following issues to be determined by this Court:

> I. Did the trial judge err in refusing to suppress all evidence relating to the interception of

---

1. *Baldwin* was subsequently affirmed by the Court of Appeals in *State v. Baldwin,* 289 Md. 635, 426 A.2d 916 (1981).

telephone conversations since the order for a wiretap did not comply with Maryland Code (1974, 1980 Repl. Vol.), Courts and Judicial Proceedings Article, Section 10-408 (f)?

II. Did the trial court err in refusing to suppress evidence obtained and derived from intercepted telephone conversations because the affidavit failed to show probable cause that "higher ups", the objects of the investigation, existed?

III. Did the trial judge err in determining that the motions to suppress evidence relating to evidence obtained as a result of ex parte orders to intercept telephonic communications could not be considered since they violated Rule 736 of the Maryland Rules of Procedure?

IV. Did the trial judge err in permitting the use of copies of the application, affidavit and order for interception of telephonic communications at the hearing on this motion to suppress when the originals were allegedly lost and the seals on the applications, affidavits and orders were broken?

V. Was it reversible error not to suppress any evidence derived from intercepted telephonic conversations because of the State's failure to comply with Rule 741's automatic discovery?

VI. Did the trial judge err in refusing to suppress any evidence obtained as a result of the search of the appellant and his residence and effects because of the invalidity of the search warrant?

VII. Did the trial judge err in refusing to suppress evidence obtained through intercepted telephonic communications since it was not shown that "higher-ups" existed and that other procedures would fail to produce desired information?

VIII. Was the appellant denied due process of law because the lower court refused to grant him a new hearing on his motion to suppress after documents had been found by the court?

At the hearing on the motion to suppress on March 6, 1980, it was determined that two separate wiretap orders were involved; the first, dated August 2, 1979, authorized interception of communications from the phone of Linda Woods; the second, dated August 27, 1979, authorized a wiretap on a phone listed in the name of Theodore Stevens.

During the course of the hearing it was discovered that the applications and supporting affidavits for the wiretap orders had been contained in sealed envelopes. One of the envelopes had been opened prior to the hearing without an order of court, presumably by the state's attorney. Because of the confusion, the trial judge indicated that there would be a recess to another day; however, on April 9, 1980, the trial judge filed a memorandum opinion which read as follows:

> In each of the above cases the Defendant has filed a Motion to Suppress Evidence obtained by the interception of telephonic communications. At the hearing some confusion existed regarding the originals of two separate applications for wiretaps. Two sealed envelopes were produced from the Clerk's Office but they yielded only an original application with supporting documents and copies of the others. After the hearing the Court located a third sealed envelope in the Clerk's vault which contained the original documents associated with the second wiretap. All documents have been reviewed by the Court and have been resealed and returned to the Clerk's vault.
>
> The Court has reviewed both wiretap applications and the documents in support thereof and finds that they satisfy both the Maryland and Federal Statutes dealing with wiretaps. And the Court further finds that they contain within them

sufficient probable cause for their issuance. Therefore, all Motions to Suppress will be denied.

The renewed motion to suppress stated thirteen reasons for the granting of the motion, some of which had been included in the original motion. The new reasons were stated as follows: the allusion to "higher-ups" in the affidavit; an absence of a mandate in the order for regular reports specifying progress toward the goal of the interception; an absence of a showing of the need for a continuance of the interception; and the impropriety of issuing a search warrant based on the affidavit utilizing information which appellant contended was obtained by illegal wiretaps. The trial judge ruled that the renewed motion to suppress was untimely filed and denied the motion to suppress.

## I. and III.

Appellant contends initially that the trial judge erred in refusing to suppress all of the evidence relating to the interception of telephone conversations in this case because of the order for a wiretap did not comply with Section 10-408 (f) of the Courts and Judicial Proceedings Article. That section mandates that:

Whenever an order authorizing interception is entered pursuant to this subtitle, the order shall require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. The reports shall be made at the intervals the judge requires.

In addition, appellant urges that the trial court erred in holding that appellant's second suppression hearing was not timely filed pursuant to Maryland Rule 736. That rule provides in pertinent part:

Rule 736. Motions Before Trial.

a. Mandatory Motions

A motion asserting one of the following matters shall be filed in conformity with this Rule. Any such matter not raised in accordance with this Rule is waived, unless the court, for good cause shown, orders otherwise:

\* \* \*

3. An unlawful search, seizure, interception of wire or oral communication, or pretrial identification;

\* \* \*

b. Time for Filing Mandatory Motions.

A motion filed pursuant to section a of this Rule shall be filed within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel), except when discovery is furnished on an issue which is the subject of the motion, then the motion may be filed within five days after the discovery is furnished.

It should be noted that appellant apparently concedes that Rule 736, which was adopted after Section 10-408 (i) (2) of the Courts and Judicial Proceedings Article, takes precedence over that section. *See Smith v. State,* 5 Md. App. 633, 248 A.2d 913 (1968). Appellant elects to offer two alternative arguments to sustain his contention. He urges that 18 U.S.C. Section 2518 (10) rather than Rule 736 is controlling and that under that section any suppression motion made before trial, hearing or proceeding is timely. Alternatively, he argues that if Rule 736 is controlling, there was "good cause shown" to justify the filing of his second suppression motion so that the new grounds argued therein should have been heard and considered by the trial court.

The assertion that 18 U.S.C. Section 2518 is controlling over the case is raised for the first time on appeal. It was

never argued or considered below. It is therefore not preserved on appeal. *See* Rule 1085; *Von Lusch v. State,* 279 Md. 255, 368 A.2d 468 (1977). In any case, the federal wiretap statute is controlling only in those instances where it is more restrictive than the Maryland statute. *See State v. Siegel,* 266 Md. 256, 292 A.2d 86 (1976). It is not disputed that the Maryland statute is to a significant degree more restrictive than its federal counterpart. *See generally* Gilbert, *A Diagnosis, Dissection and Prognosis of Maryland's New Wiretap and Electronic Surveillance Law,* 8 U. Balt. L. Rev. 183 (1979). We hold that Rule 736 rather than 18 U.S.C. Section 2518 (10) is controlling in this case.

Appellant next asserts that this Court's decision in *Baldwin v. State, supra,* filed April 15, 1980, presented him with new arguments which were not available to him on December 14, 1979, the date he filed his initial motion to suppress. He contends that the *Baldwin* case, *supra,* (holding that there had not been sufficient compliance with Section 10-408 (f)) was sufficient "good cause" to require a hearing on his second motion to suppress. We do not agree. The requirements of Section 10-408 (f) predated *Baldwin* and appellant failed to allege any facts which excused him from raising the issue under Rule 736 and the failure to do so amounted to a waiver of this argument. *See Kohr v. State,* 40 Md. App. 92, 388 A.2d 1242 (1978).

Assuming, *arguendo,* that the delay in raising the issue may be considered as being for good cause our own independent review of the record convinces us that the ex parte orders issued in this case complied with Section 10-408 (f). Two ex parte orders authorizing wiretaps were issued, the first on August 2, 1979 and the second on August 27, 1979. Both orders provided as follows:

> Ordered that the State's Attorney for Washington County, or his designee shall advise this Court of the progress of the interception process, and the current status of the investigation in writing on each Monday throughout the course of the interception process, and shall reasonably record

> the date, time, and general content of such progress reports.

Appellant argues that the above quoted requirement does not comply with Section 10-408 (f) in that it does not require that the reports show "the progress made toward achieving the authorized objective of the orders." Our review of the language of the orders convinces us that, as distinguished from *Baldwin, supra,* the orders did require the police to make regular, timely reports at regular specified intervals. We conclude that a commonsense review of the language of the orders suggests that the police were being directed to apprise the issuing judge of the *progress* of the interception; *i.e.,* the progress toward the authorized objective.

This conclusion is supported, we believe, by the opinion of the Court of Appeals in *State v. Baldwin,* 289 Md. 635, 426 A.2d 916, 921 (1981), where Chief Judge Murphy stated

> As earlier indicated, Section 10-408 (f) directs in mandatory terms that the wiretap order contain a provision *that periodic reports be made to the issuing judge so as to permit him to evaluate what progress is being made toward achievement of the authorized objective and the need for continuing interception.* This provision, coupled with the further requirement of the section that the reports "shall be made at the intervals the judge requires," is implementary of Section 10-408 (e) of the Maryland Act — a minimum standard required by Section 2518 (5) òf the federal law which provides that a wiretap order may not be issued for a period "longer than is necessary to achieve the objective in strict compliance with this subtitle." [Emphasis supplied.]

We do not have before us the question as to whether the police adequately complied with the reporting provisions of the ex parte order in the reports they made to the issuing authority. This issue was not raised below and was therefore not reserved for appeal. Rule 1085.

## II. and VII.

Appellant argues secondly that the application and affidavit submitted in support of the issuance of the ex parte order of August 27, 1979, did not comply with Section 10-408 (c) of the Courts and Judicial Proceedings Article. He suggests that there were no facts included in the affidavit and application which show that probable cause existed to believe that "higher-ups" were involved in supplying appellant and his partner, Patrick Herbert, with cocaine. We have some doubt as to whether these issues were preserved for appeal; however, assuming *arguendo* that they were preserved, we nonetheless find no merit in this contention.

The record discloses that the affiant, Warren E. Rineker, had been a police officer for seven years, four and one-half of which he had been a member of the State Police narcotics division. He had extensive special training and experience in the area of violations of the controlled dangerous substance laws. He had worked undercover and was experienced in the use of mobile and electronic surveillance techniques. He evidently was an expert in the field of narcotics investigation. Officer Rineker stated in his affidavit:

> Your affiant, with his experience and special training, as hereinbefore described, has probable cause to believe that the aforesaid Patrick Herbert and Steve/N (NFD) are purchasing their supplies of Controlled Dangerous Substances from unknown higher echelon sources and that these sources have access to larger quantities of Controlled Dangerous Substances.

The underlying facts which support the officer's conclusions were set out in the affidavit as follows:

> 1. An *ex parte* order dated August 2, 1979 authorized the electronic interception of telephone conversations over telephone number 842-2945 listed to L. A. Woods.

2. Pursuant to the authorization numerous drug-related phone conversations between Woods and Herbert, Woods and Steve/N (NFD), and Woods and others were intercepted, some transcripts of which were included in the affidavit.

3. The conversations indicated, in Rineker's expert opinion, that Herbert and Steve/N were partners in distributing Controlled Dangerous Substances and that they were suppliers of Controlled Dangerous Substances to Woods.

4. Two conversations between Woods and Herbert (call #41 and 63) suggested that Herbert needed a day in which to acquire enough Controlled Dangerous Substances to be distributed to Woods.

5. On August 14, 1978, Rineker engaged in an undercover contact with Woods in an effort to ascertain the "higher-ups" involved with Herbert and Steve/N. In the course of the contact, Woods advised Rineker that she had a constant supply of excellent quality cocaine. In response to Rineker's inquiry concerning the amounts of cocaine Woods could supply him, she "... stated that for a very large transaction to take place, her suppliers would have to travel a good distance to obtain it."

6. Rineker's expert opinion was that Herbert and Steve/N were receiving Controlled Dangerous Substances from "higher-ups."

The issuing judge, in our opinion, could reasonably infer from these facts that there was probable cause to believe that Herbert and Steve/N were not an original source of the Controlled Dangerous Substances, but received their supply from another source. The application and affidavit in support of the ex parte order of August 27, 1979, contained more than a sufficient showing that probable cause existed to believe that "higher-ups" existed in compliance with Section 10-408 (c).

In addition, there was probable cause to believe that "[n]ormal investigative procedures have been tried and have

failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." Section 10-408 (c) (3). As Judge Lowe, writing for this Court in *Bell v. State,* 48 Md. App. 669, 429 A.2d 300 (1981) stated:

> It was clear to the issuing judge and to the judge hearing the suppression motion, and it is clear to us, that the wiretap
>
> > "procedures were not . . . routinely employed as the initial step in criminal investigation." *United States v. Giordano,* 416 U.S. 505 (1974),
>
> which is the danger the provision in question was intended to guard against. As pointed out by the trial judge, the statute was not intended to foreclose electronic surveillance, but rather, as *Giordano* suggests, it is to assure an issuing judge by showing the unlikelihood of success, or the prior failure of routine procedures, that wiretapping is not being asked for as an initial convenience.

*See also Calhoun v. State,* 34 Md. App. 365, 367 A.2d 40 (1977).

Appellant argues as a corollary to the contentions offered immediately prior hereto that the affidavit relating to the ex parte order of August 27, 1979, did not show the exhaustion of normal investigative procedures in the effort to acquire information as to "higher-ups," as required by Section 10-408 (c) (3). The affidavit discloses that an unsuccessful attempt was made by police to secure information concerning the activities of Herbert and Steve/N through ordinary investigative police work. The police instituted mobile surveillance of Herbert and stationary surveillance of the premises at 206A and 213 Rockdale Road. Neither effort resulted in information about the identities of "higher-ups." Registration checks of motor vehicles at the Rockdale Road residences of Herbert and Steve/N revealed no information useful to the investigation. Because of the physical locations of the residences it was difficult for the police officers to remain inconspicuous during surveillance.

Officer Rineker, in his affidavit, gave as his expert opinion that despite undercover purchases from Woods and the involvement of Herbert and Steve/N it was unlikely that any of them would identify the "higher-ups" directly. He further believed that the execution of a search warrant for their premises was unlikely to disclose the source of supply of the contraband in this case. The police examination of toll records was unproductive and in the opinion of the affiant was expected to be of limited benefit. Under the totality of the circumstances set out in the affidavit, we conclude that the police authorities had no means other than electronic surveillance available to them for obtaining information about "higher-ups." *See Washburn v. State,* 19 Md. App. 187, 310 A.2d 176 (1973); *Calhoun v. State, supra.*

## IV.

At the pre-trial motions hearing, the trial court was made aware of the fact that a sealed package containing materials pertinent to the electronic surveillance authorizations had been opened by the prosecutor without leave of court. Appellant now argues that the unauthorized opening of the sealed package should result in the suppression of the evidence seized as a result of the wiretap. Appellant made no such argument at trial. This contention, therefore, was not preserved for appeal. Rule 1085. We note in passing, however, that a violation of the pertinent section as to the sealing requirement under Section 10-408 (g) (2) is punishable as contempt only under Section 10-408 (g) (3) and is not remediable by a suppression of the evidence under Section 10-408 (i).

At the pre-trial motion the trial court also discovered that only the original materials for the August 2, 1979 ex parte order were within the packet considered by the court. Appellant, again, for the first time on appeal, argues that the "unexplained" absence of the original materials of the August 27, 1979 order should require the suppression of the evidence seized as a result of the wiretap. Although this

issue was not preserved for appeal, the short answer to appellant's complaint is that the misplaced materials were discovered by the court in a sealed envelope in the vault of the clerk's office. No misconduct or violation of the wiretap statute was proffered at the hearing below.

## V.

Appellant next complains he was not furnished with the information to which he was entitled in response to the motion for discovery which he filed under Rule 741. Specifically, immediately before trial, defense counsel informed the trial court that the prosecutor had failed to furnish to the defense a completely legible transcript, referring apparently to the intercepted conversations involving the appellant. Defense counsel also contended he was not given copies of the ex parte orders and the accompanying applications. On appeal, he suggests several other violations of Rule 741 but none of these additional complaints were raised below and they are not before us on appeal. *See Von Lusch v. State, supra.*

The trial court examined defense counsel's file and determined that counsel had been supplied with legible copies of the ex parte orders and applications. The trial court was further advised by the assistant prosecutor that no intercepted conversations would be used against the appellant at trial. The court concluded and we agree that under these circumstances there was no requirement either under Rule 741 or under Sec. 10-408 (g) (4) and (h) that the State furnish transcripts of the intercepted conversations to the defendant. We find that appellant was afforded proper discovery.

## VI.

Appellant, for the first time, sought suppression of the evidence seized from his Box 213 residence in his second

motion to suppress filed on May 13, 1980. This motion was not timely filed under the rules and the failure to move for the suppression of the evidence seized as a result of the search and seizure warrant amounted to a waiver under Rule 741.

## VIII.

We find no merit in this contention. Appellant raised no issue below concerning the authenticity of the materials considered by the trial judge in determining whether they satisfied the requirements of the wiretap statute.

*Judgments affirmed, costs to be paid by appellant.*