522 A.2d 1371

**Timothy Andrew FUGET**

v.

**STATE of Maryland.**

**No. 506, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

April 8, 1987.

Peter M. Levin, Assigned Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Valerie J. Smith, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Joseph I. Cassilly, State's Atty., for Harford County and John L. Dunnigan, Asst. State's Atty., for Harford County, on the brief, Bel Air), for appellee.

Submitted before GARRITY, ROSALYN B. BELL, WENNER, JJ.

GARRITY, Judge.

The appellant, Timothy A. Fuget, was convicted by a jury in the Circuit Court for Harford County (Close, J. presiding) of committing unnatural and perverted sexual practices, sodomy, and assault and battery. On each count, the appellant was sentenced to serve a term of five years consecutive.

## Facts

This matter involves an incident which took place between two individuals who had previously engaged in consensual sexual relations. According to Ms. Linda Pinkerton, on the night of December 30, 1984, at approximately 2:30 a.m., as she and the appellant were riding in his station wagon on Route 40 in Harford County, they drove into a partly wooded area and engaged in foreplay. Upon her refusal to perform fellatio on him, however, he struck her jaw with his fist and told her that if she did not perform the act he would kill her. After telling the victim "that all women were whores and sluts and that they all deserved what [she] was getting," he sodomized her, engaged in intercourse, ordered her to repeat an act of fellatio, and then ejaculated in her mouth. Eventually, he drove her near her home. When Ms. Pinkerton arrived home, she attempted to telephone the police but realized that she could not speak coherently because of her jaw. Her brother, however, called the police on her behalf and took her to Fallston Hospital.

Ms. Laura Kelly, a nurse in the emergency unit, testified that she was on duty at 4 a.m. when Ms. Pinkerton came into the emergency room and complained of having been attacked. She further testified that the victim was upset and crying, that she had suffered contusions to the right side of her face, that her rectum was tender and red, and that x-rays showed that her jaw had been fractured in two places.

The appellant had told Ms. Pinkerton that he was going to go to Shreveport, Louisiana, where he worked, and he then did so. After his arrest in Louisiana, the appellant returned to Maryland on his own recognizance. When he reported to the Harford County Sheriff's Office, Deputy First Class Lillian Taylor placed him in custody, obtained a written statement of the incident, and presented him to a District Court Commissioner on a charge of rape in the first degree. As the appellant contends that Deputy Taylor coerced him into giving a statement, the facts surrounding her interrogation of him will be discussed when considering that issue.

The appellant testified, in essence, that while engaging in consensual intercourse, Ms. Pinkerton made derogatory remarks to him when he could not hold an erection, and he thereupon went back to the front of the vehicle and proceeded to get dressed. Next, Ms. Pinkerton lunged at the appellant; he then grabbed her hand, pushed it away, and tried to calm her down. When she again attacked him, he tried to grab her but his hand hit her face. The appellant denied having engaged in "anal sex despite Linda's seeking it." He refused, on the ground of self-incrimination, to answer the question of whether he had engaged in fellatio.

The appellant presents the following questions for our review:

    I.   Whether trial was commenced in accordance with the time period allowed under Md. Rule 4–271.

    II.   Whether the appellant was denied his right to a speedy trial.

    III.   Whether certain pretrial statements made by appellant were admissible in evidence.

    IV.   Whether the trial court properly admitted photographs depicting the victim's injuries.

    V.   Whether hospital records pertaining to the victim's examination in the emergency room were properly admitted.

VI.   Whether the victim's testimony was so inconsistent
      and contradictory that it rendered the evidence le-
      gally insufficient to support the convictions.

### I.   *Timeliness of Trial*

■ The appellant asserts that the indictment should have
been dismissed as he was not brought to trial within the
180–day period mandated by Rule 4–271(a).   That rule pro-
vides that a defendant shall be tried not later than 180 days
after the earlier of the first appearance of counsel or the
first appearance of the defendant before the circuit court.
*See Pearson v. State,* 53 Md.App. 217, 219, 452 A.2d 1252
(1982).

The docket entries reflect that prior to the appellant's
appearance before the circuit court, an appearance of the
Office of the Public Defender was entered on his behalf on
February 14, 1985.   As trial commenced on August 13,
1985, 180 days from the date of docketing, we hold that the
appellant was tried in accordance with Rule 4–271(a).

### II.   *Speedy Trial*

The appellant asseverates that the delay between his
arrest and trial was one of constitutional dimension, trigger-
ing the balancing test of *Barker v. Wingo,* 407 U.S. 514, 92
S.Ct. 2182, 33 L.Ed.2d 101 (1972).

■ In assessing whether a defendant has been denied
a speedy trial, the court balances four factors, including (1)
the length of the delay;  (2) the reason for the delay;  (3)
whether the defendant asserted his speedy trial right; and
(4) whether the defendant was prejudiced by undue delay.
*Powell v. State,* 56 Md.App. 351, 357–58, 467 A.2d 1052
(1983).   The balancing test, however, is applied only if the
length of delay is in the first instance of "constitutional
dimension."   That depends upon the particular circumstanc-
es of the case and the length of the delay.   *Coleman v.
State,* 49 Md.App. 210, 220, 431 A.2d 696 (1981).   Indeed, a
defendant is not entitled to an immediate trial as a reason-
able period must be allowed for normal preparation of the

prosecution and orderly process of the case. *Epps v. State,* 276 Md. 96, 110, 345 A.2d 62 (1975). The actual computation of the length of delay, for speedy trial purposes, begins when the defendant was accused and the prosecution has commenced, which is usually the arrest or indictment, whichever is earlier. *Borgen v. State,* 58 Md.App. 61, 72, 472 A.2d 114 (1984).

■ In the case at bar, the appellant was arrested in Shreveport, Louisiana, on December 31, 1984, and was then released on bond. He surrendered himself to Maryland authorities on January 31, 1985. As the State had no control or jurisdiction over the appellant until his surrender, the time period for the State to prepare and process the appellant's case began on January 31, 1985.

■ The appellant claims that he was denied a speedy trial because his trial did not occur until August 13, 1985. Although the trial was postponed at the State's request on May 7, 1985, the State gave as its reasons for postponement that a witness was unavailable and x-ray reports were outstanding.[1]

Based on our review, we hold that the trial judge properly concluded that the delay of six and one-half months between the appellant's surrender and arrest on January 31 and his trial was not of constitutional dimension.

### III. *Statement Made to Deputy First Class Lillian Taylor*

The appellant argues that the statement he gave to DFC Lillian Taylor should have been suppressed on the grounds that she knew he had been represented by an attorney, that she had coerced him into making an incriminatory statement by "inferring" that because of his cooperation it was "very possible" she would recommend his release from

---

1. The appellant made his initial appearance in District Court on February 1, 1985, and the grand jury indicted him on February 5, 1985. A public defender entered an appearance on appellant's behalf in circuit court on February 14, 1985.

custody within seventy-two hours, and that he would be afforded lenient treatment.

■ Evidence presented at a hearing on the motion to suppress the statement showed that at the time of the extradition proceeding in Louisiana, the appellant had been represented by appointed counsel who had successfully argued that the appellant be allowed to surrender voluntarily to Maryland authorities. It was further established at the suppression hearing that the appellant understood his constitutional rights which were explained to him in compliance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that he had expressly acknowledged that he had been placed under arrest, and that he had been willing to give a statement to Deputy Taylor without a lawyer being present.

Although Deputy Taylor acknowledged having received a letter from the District Attorney in Louisiana, which referenced a copy to appellant's Louisiana counsel regarding extradition proceedings, she did not believe the appellant to be represented by counsel when he surrendered to custody in Maryland. The trial court found that Louisiana counsel had been appointed to represent the appellant solely regarding extradition rather than for proceedings taking place in Maryland on the charge. We agree.

The crux of appellant's argument in relation to being coerced by Deputy Taylor into making a statement, which proved to be somewhat inculpatory, is unique. Rather than alleging abusive force or intimidation by Deputy Taylor while being interrogated, he contends that he was deceived by her "smile along with coddling words and ... sympathetic sounds." By such conduct, Fuget testified, Deputy Taylor "inferred" that it was possible that he would be released within seventy-two hours after her further investigation or that she would recommend his release on a personal recognizance bond. He further testified Deputy Taylor led him to believe that he would be granted more lenient treatment if he cooperated. He thus signed a waiv-

er of his rights, acknowledged that no threats or promises had been made to him, and gave a statement to Deputy Taylor.

When she testified in rebuttal, Deputy Taylor denied that either she or any other officer in her presence ever told the appellant that he would be released on bond or on his own recognizance if he cooperated, or that it would be to his advantage to give a statement.

■ Although a custodial statement may be considered involuntary if it appears it was made when an accused is told that he will be afforded some special advantage or consideration in exchange for such statement, the trial court did not find that situation to exist. *Hillard v. State,* 286 Md. 145, 406 A.2d 415 (1979); *State v. Kidd,* 281 Md. 32, 375 A.2d 1105, *cert. denied,* 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977).

■ Deputy Taylor testified that she perceived her job as one to "investigate the charges alleged against Mr. Fuget ..." and to investigate this case and Mr. Fuget. Although she obtained background information as to Ms. Pinkerton, when she attempted to do likewise as to Mr. Fuget, his family refused to talk to her. We believe it apparent that the appellant, because of Deputy Taylor's solicitous attitude and willingness to investigate all facets of the case, freely related information to her in an effort to gain his release. Though the interrogation technique employed by Deputy Taylor may have been somewhat unique, we are unwilling to conclude that her smile, coddling words, or sympathetic sounds coerced the appellant into making an incriminatory statement. Upon our independent review of the evidence, therefore, we hold that the appellant's statement was free and voluntary and not a product of improper police influence.

### IV. *Photographs Depicting Victim's Injuries*

During the trial, two pictures of the victim, taken in the hospital under Deputy Taylor's direction, were admitted

into evidence. The appellant argues that the photos were prejudicially inflammatory and did not accurately depict Ms. Pinkerton's injuries.

The decision whether to admit photographs depicting the condition of victims and the location of their injuries is left to the sound discretion of the trial judge and will not be disturbed on appeal unless plainly arbitrary. *Johnson v. State,* 303 Md. 487, 502, 495 A.2d 1 (1985); *Bowers v. State,* 298 Md. 115, 135–36, 468 A.2d 101 (1983).

In *Roberts v. State,* 4 Md.App. 209, 213, 241 A.2d 903 (1968), we held that a display of an assault victim's injuries is admissible as specifically material to an issue in the case or as relating to the *res gestae. See also* 87 A.L.R. 2d 926 for extensive annotation on subject. Based on our review of the photographs, we hold that the trial judge did not abuse his discretion in admitting them for the purpose of depicting the nature and extent of Ms. Pinkerton's facial injuries.

### V. *Admission of Emergency Room Records*

Ms. Laura Kelly, a registered nurse at Fallston Hospital, testified that she had been working in the emergency room during the early morning hours of December 30, 1984, when Ms. Pinkerton was admitted. She testified regarding the details of the examination and treatment and identified certain written observations and a diagnosis as having been written by Dr. Thomas in her presence. Over objection she read that portion which indicated Ms. Pinkerton's mandible had been fractured in two places. Defense counsel objected on the grounds of hearsay.

It is well established that a hospital record is admissible under the business records exception to the hearsay rule. This includes diagnosis of an examining physician where there is no evidence indicating that the physician was unqualified to make such diagnosis. *Raithel v. State,* 40 Md.App. 107, 118–20, 388 A.2d 161 (1978). Indeed, Nurse Kelly testified that she was one of the

parties to the making of the record in question and that it had been made in the normal course of hospital business. We hold that the trial judge did not abuse his discretion in allowing the emergency room record to be admitted into evidence.

## VI. *Nature of Victim's Testimony*

■ The appellant alleges that Ms. Pinkerton's testimony was inconsistent and so contradicted by other evidence that it was insufficient to support the convictions in light of *Kucharczyk v. State,* 235 Md. 334, 201 A.2d 683 (1964).

The appellant cites the fact that the complaining witness testified that she had consensual relations with him on prior occasions and that she had not resisted when pulled into the rear of the station wagon. Furthermore, Ms. Pinkerton's denial that the appellant had struck her upon believing that she had taken his wallet was contradicted by her former boyfriend, James Stout.

Mr. Stout testified that although he had previously given a statement to Deputy Taylor, which had substantially confirmed Ms. Pinkerton's version related at trial, Ms. Pinkerton later changed her account of the incident. Mr. Stout said that during a break-up argument with Ms. Pinkerton, she advised him that "what had happened hadn't happened. She said the reason she got hit was because Timmy couldn't find his wallet and thought his wallet was stolen."

The appellant's reliance on *Kucharczyk* is misplaced. In *Bailey v. State,* 16 Md.App. 83, 94–5, 294 A.2d 123 (1972), we noted that the *Kucharczyk* doctrine is an extreme one which will be applied but rarely. It holds that where a witness testified to a critical fact and then gives directly contradictory testimony regarding the same critical fact, the jury should not be allowed to speculate and select one of the opposite versions. As pointed out in *Bailey,* the doctrine does not apply where a witness's testimony is contradicted by other prosecution or defense witnesses, nor where the testimony of a witness is equivocal, doubtful or enig-

matical as to the surrounding detail. Clearly, these are matters for the jury to weigh and resolve in the course of its factfinding process. *Walker v. State,* 53 Md.App. 171, 177, 452 A.2d 1234 (1982); *Barnes v. State,* 31 Md.App. 25, 28, 354 A.2d 499 (1976). Indeed, we note that Mr. Stout's version that Ms. Pinkerton's injuries were precipitated by the wallet episode was even contradicted by the appellant's own testimony. We hold that the evidence was not rendered insufficient based on the *Kucharczyk* doctrine.

JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.