532 A.2d 707

Roy Edwin CALHOUN

v.

STATE of Maryland.

Nos. 166, 207, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Nov. 6, 1987.

686

Michael E. Kaminkow (Wartzman, Rombro, Omansky, Blibaum & Simons, P.A., on brief), Baltimore, for appellant.

Ronald M. Levitan, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty. for Baltimore County, Mickey Norman and Frank Meyer, Asst. State's Attys. for Baltimore County, on brief), Towson, for appellee.

Argued before GILBERT, C.J., and GARRITY and POLLITT, JJ.

GILBERT, Chief Judge.

In this appeal we once again visit an inhabitant of the world of the stealthy and surreptitious—the wiretap. We are here asked whether the Maryland Wiretap and Electronic Surveillance Law commands the principal prosecuting attorney personally to make progress reports to the judge who issued the order and whether the periodical submission of the wiretap logs to the issuing judge satisfies the Act's requirement of a progress report.

Roy Edwin Calhoun does not challenge his culpability, probable cause for issuance of the wiretap order, or the sufficiency of the evidence. He does not even voice objection to the lengthy term of imprisonment [1] he faces. Instead, as can be seen from the issues posited to us, Calhoun rests his appeal on what he perceives to be procedural defects in the execution of the surveillance.

The evidence to convict Calhoun was derived principally from telephone wiretaps. On four separate occasions the State's Attorney for Baltimore County applied for the issuance of a wiretap order. Each application was supported by the appropriate affidavit, signed and sworn to by two detectives of the Baltimore County Police Department's narcotics unit. The wiretap orders were issued by Judge James S. Sfekas of the Circuit Court for Baltimore County. Pursuant to Md.Cts. & Jud.Proc. Code Ann. § 10–408(f), all of the orders directed that progress reports be made to the judge by "the Baltimore County Police Department, the applicant, or a duly sworn Assistant State's Attorney for Baltimore County." The reports were to show what progress was being "made toward achievement of the authorized objectives" as well as the necessity, if any, "for continued interception...." The wiretap orders commanded that the progress reports be made to the issuing judge, no later than every seventy-two hours. The orders were, however, completely silent as to the mode of reporting.

During the period of surveillance, which continued from June 17 to August 14, 1985, Judge Sfekas received timely reports from the police. The progress reports that were submitted to Judge Sfekas consisted of updates from the wiretap logs. Those logs were records of the date and time of each telephone call received or made, as well as the telephone number called, if initiated from the tapped phone.

---

1. Calhoun was indicted and tried in both Baltimore County and Baltimore City. In the county he was sentenced to terms totaling fifty-five years. The term meted to him in the Circuit Court for Baltimore City was twenty years concurrent with the previous sentence. Both cases were consolidated on appeal.

The logs also contained a summary of the intercepted conversations. Notations were made in the log as to the pertinence of each intercepted call. If the progress report was submitted in person by the police officer, the judge was shown the logs and informed relative to any pertinent calls. When the report was made to Judge Sfekas by telephone, the police officer read the logs to the judge but did not comment on the content. Until the wiretap was terminated, the judge, at the end of each progress report, advised the reporting police officer to continue the interceptions.

The two questions Calhoun presents to us relate to compliance with Md. Cts. & Jud. Proc. Code Ann. § 10–408(f). That section of the Code states:

> "Whenever an order authorizing interception is entered pursuant to this subtitle, the order shall require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. The reports shall be made at the intervals the judge requires."

## I.

■ Calhoun initially contends that the wiretap authorization order is defective because it permits law enforcement officials other than the State's Attorney to make the mandated progress report. Progress reports are an essential precondition for obtaining valid intercept authority, *State v. Baldwin*, 289 Md. 635, 643, 426 A.2d 916, 921 (1981), *aff'g* 45 Md.App. 378, 413 A.2d 246 (1980). The legislatively required progress report is an integral part of the intercept stage and, therefore, strict compliance with it is necessary. *Baldwin*, 45 Md.App. at 393, 413 A.2d 246. Section 10–408(f) is, however, silent regarding the identity of the person who must provide the progress report to the issuing judge.

■ The appellant, seeking refuge in *Poore v. State*, 39 Md.App. 44, 384 A.2d 103, *cert. denied*, 282 Md. 737 (1978),

argues that the progress reports necessitated by § 10–408(f) must be made by the State's Attorney personally and not by a designated assistant or the police. That argument is bottomed on analogizing the progress report to the application for the wiretap order or to the request for postponement of notice to the suspect. The "Wiretap Act" specifically provides in § 10–406 that the application for an order to wiretap must be made by "[t]he Attorney General, State Prosecutor or any State's Attorney." The same requirement applies to the postponement of notice to the persons whose conversations had been intercepted. *Poore v. State,* 39 Md.App. at 58–59, 384 A.2d at 112.

We think the analogy employed by Calhoun falls short because progress reports, although mandated by the statute, are vested, insofar as the manner of report is concerned, in the absolute discretion of the issuing judge. The reports may be either oral or written, as the judge directs. The period of time covered by the report and the frequency of the reports are for the issuing judge to decide. Since the purpose of the report are solely to apprise the judge from time to time as to the progress that is being made toward the achievement of the objective of the electronic surveillance, we perceive no reason why one of the police officers who is actually engaged in the surveillance cannot make the progress reports to the issuing judge. Indeed, the officer is in a much better position to inform the judge, firsthand, about the progress of the surveillance than is the principal prosecuting attorney, who ordinarily would not have personal knowledge of the progress of the surveillance but must rely upon information received from the surveillance team. The principal prosecutor's reports to the judge, of necessity, would be grounded on second or thirdhand information. The statute does not require the principal prosecutor to make the progress reports personally to the issuing judge. There is nothing in the statute that directs the judge to receive secondhand information from the principal prosecutor when firsthand data is available through the police members of the surveillance team.

This Court in *Howard v. State,* 51 Md.App. 46, 66, 442 A.2d 176, 187–88 (1982), speaking through Judge Orth, rejected an argument similar to that made by Calhoun. In *Howard* Judge Orth wrote for the Court:

"We summarily dispose of the complaint about who prepared the reports. Although the issue was raised below by appellants in a pretrial memorandum of law, the transcript of the suppression hearing does not reflect that it was pursued, and so it was neither tried nor decided below. Md. Rule 1085. But, assuming *arguendo* that it is properly before us, it is utterly devoid of merit. It takes no keen analysis of the statutes to appreciate that neither of them has a requirement that the progress reports be prepared by 'the principal prosecuting attorney.' The section of the federal law cited by appellants, § 2516(2), concerns only an application for an order, as does the companion provision in the State law, § 10–406. There was no violation of the statutes and no departure from the direction in the orders with respect to who prepared and signed the progress reports."

Moreover, we observe that in *Howard* the issuing judge directed that the progress reports were to be made by "the State's Attorney or his designee." *See also Nye v. State,* 49 Md.App. 111, 117, 430 A.2d 867, 871 (1981). Subsequently, in *Baldwin,* 45 Md.App. at 393, 413 A.2d at 255, we implicitly interpreted § 10–408(f) as sanctioning the police officer's making progress reports to the issuing judge when we said: *"The issuing judge shall provide in the order for the interception that the police report to the judge at designated intervals on the progress being made by the police in attaining their objective"* (emphasis in original). Later in *Salzman v. State,* 49 Md.App. 25, 44, 430 A.2d 847, 859 (1981), we again implicitly approved of the practice of having the police make the progress reports to the issuing judge. Although *Baldwin, Nye,* and *Salzman* were not decided on the basis of the identity of the reporting agent, each assumed to be valid what *Howard* states to be so— there is no requirement in the statute "that the progress

reports [are to] be prepared by 'the principal prosecuting attorney.' "

We now make explicit what we have heretofore made implicit, and we hold that § 10–408(f) permits the issuing judge to specify the identity of the reporting agent for the requisite progress reports, and that designation may include the law enforcement officers who are members of the surveillance team.

## II.

Calhoun next assails the adequacy of the progress reports that were made by the police to the issuing judge. The progress reports consisted of logs kept by the surveillance team. The logs, we are informed by the transcript of the testimony, contained a summary of each intercepted conversation and the telephone number dialed from the tapped telephone, as well as the date and time of the interception. Calhoun avers that the reports were deficient because the reporting agents presented the issuing judge with the logs, leaving him to draw his own conclusions as to the progress that was being made toward the achievement of the objective of the investigation and the need for continued interception.

Under the federal statute, 18 U.S.C. § 2518(6), progress reports are not mandated, but the issuing judge may require them. The Maryland statutory counterpart, § 10–408(f), as we have seen, compels progress reports.[2] In *Baldwin v. State, supra,* we explained the purpose of progress reports:

"Section 10–408(f) was enacted so as to *assure* the public that notwithstanding the issuance of a wiretap order, its use would be, insofar as possible, controlled by a neutral authority, the issuing judge, and that it would

---

2. Of our sister states, only Hawaii, Haw.Rev.Stat. § 803–46(f), Louisiana, La.Rev.Stat. § 15:1310(F), and West Virginia, W.Va.Code § 62–1D–11(f), currently require that a provision for progress reports be part of a wiretap order.

continue no longer than necessary so as to minimize the intrusion into the privacy of others."

45 Md.App. at 393, 413 A.2d at 255 (emphasis added). Under the federal statutory scheme, the issuing judge *may* require progress reports, but in Maryland the issuing judge *must* demand them. The particulars of the reports in both instances are left to the discretion of the issuing judge.

■ A defendant may attack the reporting aspects of a wiretap investigation on various grounds. To instantiate: an accused may assail the facial validity of the wiretap order on the basis that it does not contain a provision for progress reports, *Baldwin, supra,* or specify the reporting intervals, *Salzman, supra.* He may also challenge whether the judge-ordered reports were actually made to the issuing judge. *Pearson v. State,* 53 Md.App. 217, 452 A.2d 1252 (1982).

■ Defendants may not, however, inquire into the mental processes by which the issuing judge determined whether to continue or terminate a surveillance. Defendants may not ask the issuing judge to explain why he or she continued a surveillance, and they may not ask another judge to review the progress reports and second-guess the issuing judge's continuing of a surveillance.

■ Although § 10–408(f) mandates that there be progress reports, the reports themselves are merely tools to assist the issuing judge in his overall supervision of the interception process. *See e.g., U.S. v. Iannelli,* 477 F.2d 999 (3d Cir.1973), *aff'd on other grounds,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *In Re DeMonte,* 674 F.2d 1169 (7th Cir.1982); *U.S. v. Scully,* 546 F.2d 255 (9th Cir.1976); *U.S. v. Van Horn,* 789 F.2d 1492 (11th Cir.1986). The reports, under Maryland law, are discoverable solely to ascertain that they exist and were not shams.[3]

---

**3.** There can be no question but that Judge Sfekas actively supervised the wiretap investigation. Twice he personally visited the wiretap plant site. On at least six other occasions, he initiated contact with

JUDGMENTS AFFIRMED.
COSTS TO THE APPELLANT.

the investigating officers for updates. While on vacation he telephoned for updates. The progress reports by the police constituted only a part of Judge Sfekas's diligent supervision.