468 A.2d 394

Hugh Hartman BALDWIN, Jr., Appellant,

v.

STATE of Maryland, Appellee.

No. 81, Sept. Term, 1983.

Court of Special Appeals of Maryland.

Dec. 9, 1983.

John L. Kopolow, Asst. Public Defender, with whom was Alan H. Murrell, Public Defender of Maryland on the brief, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., of Maryland, John L. Scarborough, State's Atty., for Cecil County and Sidney S. Campen, Jr., State's Atty., for Talbot County on the brief, for appellee.

Argued before LISS, ALPERT and GETTY, JJ.

GETTY, Judge.

This case commenced in 1978, five years later it is still with us. Hugh Hartman Baldwin, appellant, was charged with various drug related offenses. His original convictions on seven of the eight charges placed against him were overturned on appeal. *Baldwin v. State,* 45 Md.App. 378, 413 A.2d 246 (1980). Upon retrial he was convicted on four

counts and these convictions were reversed on appeal because appellant was required to proceed without counsel. *Baldwin v. State,* 51 Md.App. 538, 444 A.2d 1058 (1982). Appellant's third trial resulted in convictions for maintaining a common nuisance; possessing phencyclidine (PCP) with intent to distribute; and possessing equipment adapted for the production and sale of controlled dangerous substances.

On January 3, 1983, the court imposed consecutive five year sentences on each of the three convictions with one year of each sentence suspended. Additionally, appellant was fined $15,000.00 on the charge of possessing PCP with intent to manufacture and distribute. This appeal was filed on January 11, 1983.

Appellant raises seven issues, namely:

I   Was the evidence sufficient to sustain the conviction for maintaining a common nuisance at the Route 662 farmhouse?

II   Were the promissory notes payable to appellant properly admitted into evidence?

III   Did the court err in admitting testimony relating the quantity of PCP seized to that seized in previous investigations?

IV   Did the court err in admitting the limited prior testimony of Agent McGeehan in view of his unavailability at trial?

V   Was appellant properly convicted of separate offenses and sentenced to consecutive sentences?

VI   Was appellant's sentence based on improper considerations?

VII   Was evidence seized pursuant to the search of appellant's home, car, and bank safe deposit box properly admitted into evidence?

## FACTS

In May, 1978, appellant became the subject of an investigation being conducted by agents of the Maryland State

Police Narcotics Section and the Federal Drug Enforcement Administration. On May 19, 1978, Corporal Spicer, a member of the Maryland State Police, followed appellant from the Atlantic Glass Company in Easton to a farmhouse on State Route 662. Later that day Spicer trailed appellant to the campus of Washington College in Kent County and from the college to the Kent Plaza Shopping Center.

Agent McGeehan of the Federal Drug Enforcement Administration met Spicer at the shopping center and handed him a paper bag containing three or four plastic baggies holding a green residue. Spicer stated that he received the paper bag from McGeehan "several minutes" after he observed appellant in the shopping plaza. McGeehan's prior testimony was read to the jury, over objection, stating that he observed appellant place the bag in the shopping center trash can. Upon analysis the green substance was determined to be parsley adulterated with PCP.

Trooper William O. Murphy of the Maryland State Police was involved in the surveillance on May 19. He observed appellant depart from the farmhouse at 10:00 A.M. and go to the Washington College campus. Appellant carried a large paper bag into a dormitory and reappeared several minutes later without the bag. Murphy followed appellant from the college campus to the shopping center. Trooper Murphy lost contact with appellant who left the shopping center at 11:58 A.M., but he saw McGeehan retrieve the brown bag from the trash can at the shopping center approximately fifty minutes after appellant had departed.

On May 22, 1978, a search and seizure warrant was executed at the farmhouse. Among the items seized from a shed were a fifty gallon can, a five gallon bucket, and two scoops, all containing PCP. Other items confiscated included cans of benzene and potassium cyanide, a bag of parsley flakes, a bottle of methanol, several measuring cups, a chemical thermometer, a triple beam balance and filter papers.

J. James Rivera, an agent of the Federal Drug Enforcement Administration, testified that the ninety-three pounds of PCP powder seized is not an amount one would use for his own consumption. Testimony from a state police chemist, John J. Tobin, established that potassium cyanide is one of the compounds from which PCP is synthesized, and that the powdered product is often dissolved in benzene for spraying on parsley flakes.

On May 24, 1978, search and seizure warrants were executed on a safe deposit box in the Maryland National Bank in Easton and upon the home of appellant's parents in Easton, including the vehicle appellant had been operating during the earlier surveillance. The safety deposit box contained $11,477.00 in currency. The box was rented by Atlantic Canvas Products; appellant was the vice-president thereof. Items seized from the house and car included several guns, $5,080.00 in currency, chemical formulas, a drug index, a key to the farmhouse shed and two promissory notes payable to appellant. The notes were signed by one Jack Long and were in amounts of $10,000.00 and $50,000.00.

I

■ Article 27, Sec. 286(a)(5) prohibits the keeping or maintaining of:

"any common nuisance which means any dwelling house . . . building . . . or any place whatever which is resorted to by drug abusers for purpose of illegally administering controlled dangerous substances or which is used for the illegal manufacture, distribution, dispensing, storage or concealment of controlled dangerous substances or controlled paraphernalia . . . ."

Appellant contends that the evidence shows that the appellant alone frequented the premises, and because it was not open to the public a common nuisance is not proved, citing *Tucker-Smith v. State,* 19 Md.App. 39, 308 A.2d 696 (1973). We disagree. Tucker's conviction for maintaining a common nuisance was reversed because the evidence in *Tucker*

showed that he was a drug addict who used premises which he occupied as a residence to conceal drugs for his personal use. In contrast, appellant herein did not use the premises as a residence and did not store drugs for his own use. The jury found that appellant manufactured drugs in such quantity as to indicate that the drugs would be distributed to others.

■ The legislature intended the phrase "common nuisance" to have its common law meaning. *Skinner v. State,* 16 Md.App. 116, 293 A.2d 828 (1972). At common law a common nuisance was defined as something "hurtful to the public"—"an outrage against common decency and common morality [which] could have no other effect than the corruption of the morals, honesty and good habits of the people." *Beard v. State,* 71 Md. 275, 17 A. 1044 (1889); *Tucker, supra.* Keeping the premises open to the public may be a requisite for houses of ill repute, but such is not a requirement in a charge of manufacturing, storing or concealing controlled dangerous substances. The statute and this Court's interpretation of it make clear that the essence of the common nuisance offense as it relates to the manufacture of illegal drugs is the potential danger to the public by the continuing and recurring character of the offense on such premises.

## II

Of the items seized from the automobile used by appellant, only the two promissory notes were the subject of an objection. The other items included a key to the shed, cash, firearms, instructions for manufacturing drugs, a notebook relating alleged drug transactions, personal checks and bank records.

The trial court admitted the notes and required the state to produce other evidence showing a business relationship between appellant and Long, the maker of the notes. This showing, the court reasoned, permitted appellant to argue that the notes were part of a legitimate business transaction.

We disagree; the notes were not admissible. First, the appellant need not argue anything and cannot be placed in the position of being required to argue the legitimacy of evidence that was not shown to be connected to the drug offenses. Secondly, the real test of admissibility of evidence in a criminal case is the connection of the fact proved with the offense charged. *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976). *People v. Galetti,* 55 A.D.2d 154, 391 N.Y.S.2d 109 (1976), is analogous to the present issue. In *Galetti,* the appellant was charged with three separate drug sales. She testified that she was unemployed. The state was permitted to rebut her testimony by showing that she had funds amounting to $25,000.00. The court held that the evidence was irrelevant and prejudicial because there was no connection shown between the drug sales and the cash. This gave rise, the court stated, to an impermissible argument that the large sum of money was indicative of extensive drug dealing. Additionally, it required the defendant to explain or disclaim the source of her funds. Appellant herein, by the court's evidentiary ruling, was placed in the same situation and the state was permitted to argue, and did, that the notes, together with the other evidence of drug dealing, established guilt.

Aside from the notes, the other evidence seized from the car amounted to overwhelming evidence that appellant was engaged in illegal drug trafficking. To repeat, a notebook concerning drug transactions, drug manufacturing instructions, firearms and $5,000.00 in cash hidden in the car clearly established appellant's involvement in the manufacturing and possession of controlled dangerous substances. We hold, therefore, that the admission of the two promissory notes was harmless beyond a reasonable doubt. *Dorsey v. State, supra; Ross v. State,* 276 Md. 664, 350 A.2d 680 (1976).

### III

Agent Rivera testified that 93 pounds of PCP is not an amount one would use for his own consumption. This

testimony was probative and relevant to the issue of whether appellant possessed drugs in sufficient quantity to denote an intent to distribute to others. Thereafter, Corporal Rineker testified that in his 8½ years as a police officer he had not seized the quantity of drugs that this case generated. The chemist, Tobin, stated that the PCP submitted to him for analysis in this case was the largest quantity ever submitted to him in a single case.

■ The testimony of Rineker and Tobin was cumulative to that of Rivera in establishing an element that the state was required to prove—a quantity sufficient to show an intent to distribute. We conclude that *Dorsey v. State, supra,* relied upon by appellant, is distinguishable. *Dorsey* involved a police officer's stating his batting average in obtaining convictions in cases he investigated. The officer's record of success was clearly irrelevant to the question of guilt or innocence. We find no abuse here.

## IV

At the time of trial Agent McGeehan was working with the State Department in Thailand. Agent Rivera's efforts to contact McGeehan one week before trial were unsuccessful. The court found the witness to be unavailable since he was beyond the jurisdiction of the court, and McGeehan's prior sworn testimony was admitted into evidence.

The Court of Appeals has recognized that one's sixth amendment right to confront the witnesses against him[1] is not violated when the accused has been given a prior opportunity to cross-examine the witness whose testimony is to be used against him. *State v. Collins,* 265 Md. 70, 288 A.2d 163 (1972); *Crawford v. State,* 282 Md. 210, 383 A.2d 1097 (1978). Recognizing that McGeehan was subjected to extensive cross-examination, nullifying any confrontation argument, appellant argues that the witness was not "unavailable,"

---

1. The same constitutional right of confrontation conferred by the sixth amendment is secured by Article 21 of the Maryland Declaration of Rights.

because the state did not make a diligent effort to produce him.

■ We perceive no error in the court's ruling. Possibly, under 28 U.S.C., Sec. 1783(a), a federal court could have reviewed the necessity to have the witness appear and, if satisfied, McGeehan's presence could have been compelled. The state, however, is not required to make use of this provision in every case where a witness is unavailable. *See People v. Brown,* 47 Ill.App.3d 616, 7 Ill.Dec. 730, 365 N.E.2d 15 (1977). The court's discretion is not abused in deciding that a witness outside of the country is unavailable for trial, thus allowing the introduction into evidence of previously recorded testimony that was subject to cross-examination during the earlier confrontation.

## V

■ Appellant concedes that there is no merger of his convictions under the required evidence test set forth in *Thomas v. State,* 277 Md. 257, 353 A.2d 240 (1976). He maintains, however, that we should find as a matter of statutory interpretation that the Legislature did not intend, under the circumstances involved, that a person could be convicted of two separate offenses arising out of the same act or transaction.

When the Legislature intends that two crimes arising from a single act should be punished separately, we defer to that choice. If we are uncertain of the legislative meaning, we resolve the doubt in favor of the defendant. *Walker v. State,* 53 Md.App. 171, 452 A.2d 1234 (1982). Our review of Art. 27, Section 286, leads us to conclude that the Legislature clearly intended to categorize and punish separately conduct that is proscribed by the statute.

Sec. 286(a)(1) prohibits two things:
1. manufacturing or dispensing drugs;
2. possessing drugs sufficient to indicate manufacture or dispensing.

**540**

Sec. 286(a)(2) and (a)(3), not applicable here, relate to counterfeiting drugs.

Sec. 286(a)(4) proscribes the keeping of equipment to produce drugs.

Sec. 286(a)(5) makes it unlawful to maintain premises to use, make or store drugs.

The punishment sections, 286(b)(1)(2)(3), impose graduated fines and imprisonment upon "any person who violates any of the provisions of subsection (a)," depending upon whether the substance involved is a Schedule I, II or III drug.[2] We think the legislative intent is clear, and that where the possessor, the manufacturer and the property owner are the same person, separate punishment may be imposed.

## VI

Appellant's argument that the trial court based the sentence in part upon appellant's having twice exercised his right to appeal is not supported by the record.

The court recounted that appellant had the full benefit of the judicial system, as indeed he had, and indicated he was approaching the sentencing phase as if the previous trials had not taken place. The sentence, we believe and the record confirms, was based upon the chemicals involved, the nature of the operation, and appellant's efforts to saturate the college community with dangerous drugs; not on his utilization of the judicial system.

## VII

Appellant contends that the allegations in the search and seizure applications do not supply sufficient information, independent of the illegal wiretaps, to constitute probable cause for the issuance of a warrant to search the automobile or his parents' home where he occupied a room.

---

2. Ch. 470, Acts 1982, effective July 1, 1982, substituted "20 years" for "10 years" in Schedule I and II drugs, and added mandatory sentencing for second offenders.

The search warrants issued in this case covered the Atlantic Glass Company, the dwelling and premises on Route 662, the 1971 Pontiac, the safety deposit box in the Maryland National Bank, and the Baldwin residence. The applications for the various warrants recited the same background data. In *Baldwin* I, we held that evidence seized from Atlantic Glass Company was improperly admitted because the seizure was based upon illegal wiretaps. We added, however, that the affidavits for the search of the Route 662 property contained facts independently of the wiretaps to support a finding of probable cause. The Court of Appeals affirmed. *State v. Baldwin,* 289 Md. 635, 426 A.2d 916 (1981). We hold that the affidavits were sufficient to establish probable cause without the references to wiretaps or to Atlantic Glass Company.

JUDGMENTS AFFIRMED.

Costs to be Paid by Appellant.