481 A.2d 804

**Patricia Lea DEBLASI**

v.

**STATE of Maryland.**

**No. 1502, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Oct. 4, 1984.

Robert L. Miller, Jr., Bel Air, for appellant.

Christine Steiner, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen. of Maryland, Joseph I. Cassilly, State's Atty., for Harford County and Christopher J. Romano, Asst. State's Atty., for Harford County, on brief, for appellee.

Argued before GARRITY, ALPERT and BELL, JJ.

BELL, Judge.

Appellant, Patricia Lea DeBlasi, was convicted by a jury in the Circuit Court for Harford County of arson, setting fire while perpetrating a crime, and malicious destruction of property. On appeal from these convictions, DeBlasi raises numerous issues; however, since we reverse on the basis of only two of them we need not and will not address the other issues. The two issues we will address are (1) did the court err in excluding evidence which would tend to show bias on the part of the prosecuting witness; and (2) did the court err in excluding evidence that appellant's husband committed the crimes.

Before we address the merits, we will briefly describe the pertinent facts.

On November 29, 1981, DeBlasi went to the residence of her ex-husband, Ralph DeBlasi, to pick up her child support check and their child's Christmas presents. According to DeBlasi, when she arrived at the house, her ex-husband refused to accommodate her because he was in the process of leaving. Nevertheless, after he departed, DeBlasi entered the dwelling by kicking in the basement window. While she was in the house, DeBlasi recovered her child's gifts, which had been purchased by her and Mr. DeBlasi, and then proceeded to fix herself a cup of coffee. DeBlasi testified that while she prepared her coffee a towel caught fire. She threw the towel into the sink, and believing it was extinguished, exited the house.

The Fire Investigator, Robert Thomas, informed the jury that three separate fires occurred in the home, all of which, he believed, were incendiary in origin. A book of matches, with a spent match tucked behind the unspent ones was produced and identified by Thomas as the pack he suspected was used to start the fire.

The day after the fire, DeBlasi met her husband for lunch. Unbeknownst to her, undercover police officers accompanied Mr. DeBlasi and overheard their entire conversation. During lunch, Mrs. DeBlasi admitted to her husband that she had broken into the home, had taken the toys they purchased for their daughter, and while preparing her coffee caused a towel to become ignited on the stove. She claimed she had extinguished the fire before she left and denied destroying property elsewhere in the house. As DeBlasi left the restaurant, the police approached her, searched her car with her consent, discovered the toys, and then arrested her.

After deliberations, the jury returned a verdict of guilty of arson, setting a fire while perpetrating a crime and malicious destruction.

We address the two issues together because they both deal with whether the court should have excluded certain proffered evidence pertaining to appellant's defense and to

Mr. DeBlasi's alleged bias, "spite, hate, revenge and malice" toward Mrs. DeBlasi.

Appellant had cross-examined Mr. DeBlasi concerning his past behavior in an effort to prove his bias against her and that he could have started the fire. Appellant asked Mr. DeBlasi if he had ever thrown lighted matches down on the carpet and if he had ever threatened to burn the house down. He was questioned on whether he had kicked the partition in the foyer his wife built, whether he struck a match to the wood, and whether during that incident he had made the comment, "burn, baby, burn". Appellant further examined Mr. DeBlasi as to whether he had ever snubbed cigarettes out on the walls or furniture, whether he ever threatened the children, and whether he threatened to get back at appellant for embarrassing him at work. Mr. DeBlasi replied negatively to all of these questions.

Appellant then proffered testimony to the court, out of the presence of the jury, which allegedly would have impeached Mr. DeBlasi and contradicted the answers he gave on cross-examination. Mrs. DeBlasi adduced that her witnesses would testify that Ralph DeBlasi made several attempts to set the carpet and curtains on fire; that he regularly threw lighted matches into the carpet; that he put lighted cigarettes out on the walls and the television; and a few months before the incident in question he had knocked over a wooden foyer entrance that appellant was constructing and tried to start the rubble on fire in the house stating to the family "burn, baby, burn".

In response to a question pertaining to Mr. DeBlasi's mode of lighting matches, appellant proffered

Normally when Ralph lights a cigarette, like in the car, in the house, at the dinner table, he lights the match, lights a cigarette, blows it out, puts it in behind the match cover, and he might build up several matches in the match cover in the meantime.

When Mrs. DeBlasi looked at State's Exhibit # 5, a book of matches with one spent match, she responded that the

matchbook depicted the manner in which her ex-husband would place his spent matches.

Further there was proffered testimony that Mr. DeBlasi had threatened to burn the house down and had threatened appellant that someday he would set her up to prove she was unfit to have custody of their daughter. Appellant's counsel also tried to introduce Mr. DeBlasi's constant failure to pay child support.

After hearing the proffered testimony, the court admitted the evidence concerning Mr. DeBlasi's desire to get custody of the daughter, but excluded the evidence relating to support checks. The court rejected all evidence concerning Mr. DeBlasi's past destructiveness and violence on the ground that it was collateral. In summary, the court stated

So I think it's highly prejudicial to let anything more in because it's irrelevant.

The inference is that if he played with fire before, he'd do it again, and that simply is not permissible, I believe, in a Court case in these sort of circumstances.

And there's also evidence he did it to annoy Mrs. DeBlasi. Again, it's irrelevant and a little farfetched he's going to burn his own house down sooner or later.

So just as we can't let in evidence to show that the victim is a good guy, so we can't let in evidence to show that the victim was a bad guy, that he's destructive, violent, late with child support payments, because they're irrelevant in this kind of a case and the Jury might get sidetracked on the victim's alleged inequities.

So I'm going not to let it in.

Furthermore, the court permitted Mr. DeBlasi to testify that he had no insurance and allowed the jury to hear testimony from the Fire Marshall and from the State Police that the *modus operandi* of the crime was the pack of "odd" matches; yet he excluded any explanation and testimony from the defense which would link the matches to the prosecution's witness, Mr. DeBlasi.

Appellant now contends that the court erred in excluding evidence that the husband could have committed the crime; and, that the court erred in excluding evidence that Mr. DeBlasi was biased. She argues that the exclusion of this testimony amounted to a denial of due process under the standard set forth in *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) and *Foster v. State,* 297 Md. 191, 464 A.2d 986 (1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984).

We hold that the court erred in excluding the proffered testimony. Since our ruling is an evidentiary one, we need not reach the constitutional issue raised by appellant.

■ It is well established that a witness can be impeached by extrinsic evidence only with regard to material facts and not with respect to facts that are collateral, irrelevant, or immaterial to the issues of the case. *Smith v. State,* 273 Md. 152, 158, 328 A.2d 274 (1974); *See also Harris v. State,* 237 Md. 299, 206 A.2d 254 (1965); *Howard v. State,* 234 Md. 410, 199 A.2d 611 (1964). The rule preventing impeachment of a witness by extrinsic evidence on a collateral matter is aimed at preventing inconvenience, loss of time, unfair surprise to the witness and confusion of the issues.

■ The question before us, therefore, is whether the proffered testimony relates to a material or a collateral issue. In other words, are the allegations that Mr. DeBlasi threw matches down on the carpet, threatened to burn the house down, snubbed cigarettes out on the walls and furniture, threatened appellant and kicked the foyer down relevant or collateral? To answer this question, we apply the generally accepted test of collateralness which was set forth in *Attorney General v. Hitchcock,* 1 Exch. 91, 99 (1847)—Could the fact, as to which the error is predicated, have been shown in evidence for any purpose independently of the contradiction? *See* 3A J. Wigmore, Evidence § 1003 (1970). In applying the test of collateralness, there are two different groups of evidentiary facts which would be admissible independent of the contradiction: (1) facts relevant to

some material issue in the case; and (2) facts relevant to the discrediting of a witness. Wigmore, *supra* at § 1004. *See also Dorsey v. State,* 276 Md. 638, 350 A.2d 665; *Smith v. State, supra; Van Meter v. State,* 30 Md.App. 406, 418, 352 A.2d 850 (1976). Under the first group of facts, any evidence which is relevant to whether appellant started the fires and destroyed the property should be admitted. The second group of facts includes facts which would be independently provable by extrinsic evidence to impeach the witness. Among these are facts showing bias, interest, conviction of crime, want of capacity, or opportunity for knowledge. Wigmore, *supra* at § 1005.

Several cases in Maryland have applied this test of collateralness to determine whether certain proffered evidence should be admitted to contradict a witness' testimony. For instance, in *Biggs v. State,* 56 Md.App. 638, 468 A.2d 669 (1983), appellant, charged with assault with intent to murder, proffered evidence pertaining to the victim's alleged bias against him in an attempt to discredit the victim's testimony. Specifically, appellant claimed that the victim had participated in sexual relations with appellant's wife and that the victim had previously accused appellant of informing the police about the victim's prior drug dealings. This Court recognized that such extrinsic evidence may be admitted to show hostility on the part of the witness; however, we held the evidence should be excluded because the events had occurred at least eight years before and the proffer did not allege the existence of recent instances which would show prejudice or bias.

In *Smith v. State, supra,* appellant's major defense was that the shotgun which caused the death of the victim, appellant's former husband, had been fired accidently as she tried to take the gun from him. A police officer, on behalf of the State, testified the victim indicated to him that the shooting was intentional. The appellant then proffered testimony by her investigator that the victim told a police officer that appellant accidently shot her ex-husband. Ap-

plying the test of collateralness, the Court of Appeals held the testimony should have been admitted because it was clearly relevant to appellant's defense.

■  With these cases in mind, we now assess whether the facts sought to be elicited by appellant, concerning threats to burn the house, setting the carpet and curtains on fire, Mr. DeBlasi's mode of placing spent matches, Mr. DeBlasi's stubbing cigarettes out on the television and walls, and Mr. DeBlasi's threat to set up appellant, are independently relevant or pertain to Mr. DeBlasi's alleged bias and prejudice.  We hold that, except for testimony regarding the child support checks, which we agree was collateral, the proffered evidence meets our test for collateralness.  The issue tends to prove a material fact in controversy—the guilt or innocence of appellant—and therefore could have been admitted independently of the contradiction.

We do not find this error to be harmless beyond a reasonable doubt.  In *Dorsey v. State, supra* [276 Md.] at 659, 350 A.2d 665, the court noted that in order to find the error harmless we must "be satisfied that there is no reasonable possibility that the evidence complained of— whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict."  Although the jury had some evidence to convict appellant, we cannot say beyond a reasonable doubt that the court's error could not have influenced the jury.

Accordingly, we reverse and remand for a new trial because the court erred in excluding material evidence.  At retrial, appellant should be afforded the opportunity to show bias, prejudice, or ulterior motive, if any, on the part of the prosecuting witness, and be allowed to present her defense.

JUDGMENT REVERSED AND CASE REMANDED FOR A NEW TRIAL.  COSTS TO BE PAID BY HARFORD COUNTY.